UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JERRY JEROME BROWN-PEGUES,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:24-cv-847

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E.

Washington, Law Librarian Unknown Hitchingham, Resident Unit Manager Unknown Blair, Sergeant Unknown Palmer, Assistant Deputy Warden Unknown Garcia, Warden Randee Rewerts, and the MDOC. Plaintiff fails to specify the capacity in which he is suing Defendants Washington, Blair, Palmer, and the MDOC, but states that he is suing Defendants Hitchingham, Garcia, and Rewerts in their personal and official capacities. (ECF No. 1, PageID.1-3.)

Plaintiff alleges that on May 20, 2024, he arrived at the law library around 2:15 p.m. for a 2:45 p.m. law library callout. (*Id.*, PageID.7.) While Plaintiff was waiting for his law library time, he completed a photocopies form for "1983" and set it on the librarian's window for processing. After five minutes, Defendant Hitchingham asked Plaintiff if he had a callout and Plaintiff replied "yes." (*Id.*) Defendant Hitchingham then told Plaintiff that he was early, and Plaintiff stated that he was "always early." (*Id.*) Defendant Hitchingham told Plaintiff to go back to his unit and to return when it was time for his callout. (*Id.*) Plaintiff complied. (*Id.*)

At 2:40 p.m., Plaintiff was approaching the law library when Officers Ruiz and Boss, who are not named as defendants in this case, told Plaintiff that Defendant Hitchingham had instructed them not to let Plaintiff back in the law library. (*Id.*) Defendant Hitchingham also called the unit and told the unit officers not to let Plaintiff go to law library. (*Id.*) Plaintiff asserts that he had the permission of Officer Denz, not a defendant, to go to the law library early. (*Id.*)

Plaintiff had a misconduct hearing with Defendant Blair. (*Id.*) Plaintiff indicated that the misconduct ticket was motivated by a desire to retaliate against him for wanting "1983 copies" and that Defendant Hitchingham had overheard Plaintiff talking with another prisoner. (*Id.*) Defendant Blair stated that he would investigate, but never did. Nor did Defendant Blair note this defense on the ticket. Defendant Blair found Plaintiff guilty and sentenced him to 10 days' loss of

2

privileges. (*Id.*) Plaintiff states that being denied his weekly law library callout has injured his ability to do any research in his current appeal. (*Id.*, PageID.8.)

Plaintiff asserts violations of his First Amendment right of access to the courts and his Fourteenth Amendment due process rights. Plaintiff also appears to be asserting a retaliation claim against Defendant Hitchingham. Plaintiff seeks damages and injunctive relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     MDOC as Defendant

Initially, the Court notes that Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

### B. Respondeat Superior

Plaintiff fails to allege that Defendants Washington, Palmer, Garcia, and Rewerts took any action against him. In fact, Plaintiff fails to allege any facts at all about the conduct of Defendants Washington and Rewerts in the body of his complaint. He briefly mentions Palmer and Garcia, but does not identify any misconduct by those parties. Specifically, Plaintiff states that when he informed Defendant Palmer about what happened, Palmer replied, "You should not have gone over early." (Compl., ECF No. 1, PageID.11.) With regard to Defendant Garcia, Plaintiff states that he "can't remember" what he told Garcia. (*Id.*)

To the extent that Plaintiff is naming these Defendants because of the supervisory nature of their employment, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants MDOC Director Washington, Sergeant Palmer, Assistant Deputy Warden Garcia, and Warden Rewerts, who are administrative or supervisory officials employed by the MDOC, encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Conclusory assertions of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Washington, Palmer, Garcia, and Rewerts appear to be premised on nothing more than respondeat superior liability, Defendants Washington, Palmer, Garcia, and Rewerts are properly dismissed.

### C. Due Process

Plaintiff claims that Defendants violated his due process rights. Plaintiff's allegations regarding the misconduct ticket he received are somewhat confusing and largely conclusory. In Plaintiff's complaint, he asserts that Defendant Blair conducted a misconduct hearing on "the

6

ticket" and that Plaintiff told Defendant Blair that "this ticket was retaliatory due to [Plaintiff] wanting 1983 copies and that she heard [Plaintiff] talking to another prisoner (which rode out)." (ECF No. 1, PageID.7.) Plaintiff appears to be referring to Defendant Hitchingham and implying that she wrote the misconduct ticket. Plaintiff also states that Defendant Blair stated that he would investigate Plaintiff's story, but never did. Nor did Defendant Blair note this defense on the ticket. Defendant Blair found Plaintiff guilty and sentenced him to 10 days loss of privileges. (*Id.*) Plaintiff states that being denied his weekly law library callout has injured his ability to do any research in his current appeal. (*Id.*, PageID.8.)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in

7

relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff fails to specify whether his misconduct ticket was a major or minor misconduct. However, even if the misconduct was a major misconduct charge, it could not have affected an interest that falls into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.[1] *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff notes that he was sentenced to 10 days loss of privileges[2] and was

---

[1] Plaintiff is serving sentences of 10 to 15 years' imprisonment and 2 to 15 years' imprisonment for two counts of third-degree criminal sexual conduct committed on August 15, 2020, and March 14, 2017. *See* MDOC Offender Tracking Information System, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=718467.

[2] The loss of privileges sanction typically includes loss of the following privileges: (A) day room, activity room, TV room, study room, or other designated area where similar activities occur; (B) exercise facilities, such as yard, gym, and weight room/pit; (C) group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy; (D) out of cell hobbycraft activities; (E) kitchen area, including microwave, ice machine, and hot water dispenser; (F) direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120

removed from his law library callout. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and

---

"Segregation Standards"); (G) Movies; (H) Music practice; musical instruments; (I) leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee; (J) telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney; (K) visiting; (this applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report); and (L) Use of kiosk (e.g., to send/receive electronic messages or retrieve account information). MDOC Policy Directive, Prisoner Discipline, 03.03.105, Attach. E (eff. Aug. 26, 2024).

9

significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

In light of that authority, it defies logic to suggest that the lesser penalties of loss of privileges for 10 days could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'"). Accordingly, Plaintiff fails to allege any facts suggesting that he was subjected to conditions that would implicate a liberty interest as a result of the misconduct ticket. Plaintiff's Fourteenth Amendment procedural due process claims premised upon misconduct proceedings and sanctions, therefore, will be dismissed.

### D.  Access to the Courts

Plaintiff asserts that his removal from law library callout violated his right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of

legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

11

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff states that "being removed from [his] weekly law library callout has hurt [him] legally by not being able to do any research and [he has] a current appeal." (ECF No. 1, PageID.8.) Plaintiff fails to specify the nature of his current appeal. However, Plaintiff is currently appealing his criminal sexual conduct conviction in the Macomb Circuit Court. *See People v. Brown-Pegues*, Michigan Court of Appeals No. 366983. The Case Information for that appeal indicates that Plaintiff is represented by counsel and filed a *pro per* supplemental brief before the events set forth in this complaint. *See* https://www.courts.michigan.gov/c/courts/coa/case/366983 (last visited Sept. 25, 2024). Additionally, Plaintiff is pursuing an appeal of the sentencing court's denial of a successive motion for relief from judgment. *See* https://www.courts.michigan.gov/c/courts/coa/case/370940 (last visited Sept. 25, 2024). Plaintiff also filed that proceeding before the events alleged in this complaint. Plaintiff has a pending case in the United States District Court for the Eastern District of Michigan: *Brown-Pegues v. Meissner*, No. 1:23-12615-TLL-DRG (E.D. Mich.).

Nonetheless, Plaintiff fails to allege facts showing that the denial of law library time has resulted in any actual prejudice with regard to any of those proceedings. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-

imposed deadline." (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004))). Because Plaintiff fails to allege facts showing that he suffered an actual injury as a result of being denied his law library callout, his access to the courts claim will be dismissed.

### E. Retaliation

Finally, Plaintiff asserts that his misconduct was retaliatory. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to allege any specific facts in support of his claim that the misconduct ticket he received was retaliatory, nor does he even specifically allege that it was written by Defendant Hitchingham. Instead, Plaintiff vaguely asserts that during the misconduct hearing, he told Defendant Blair that "this ticket was retaliatory due to [Plaintiff] wanting 1983 copies and that she heard [Plaintiff] talking to another prisoner (which rode out)." (ECF No. 1, PageID.7.) Plaintiff fails to specify who "she" is in this conversation, but appears to be referring to Defendant Hitchingham and implying that she wrote the misconduct ticket.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey*, 420 F.3d at 580; *Murphy v. Lane*, 833 F.2d 106,

108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that any Defendant retaliated against him for engaging in protected behavior. Accordingly, his speculative allegation fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma*

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A Judgment consistent with this Opinion will be entered.

Dated:   September 30, 2024                         /s/ Jane M. Beckering
                                                                      Jane M. Beckering
                                                                      United States District Judge